IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOHAMMED MEKUNS** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **CAPELLA EDUCATION COMPANY,** | : | **No. 15-1542** |
| *Defendant*. | : | |

PRATTER, J.                                                                                       NOVEMBER 13, 2015

## MEMORANDUM

### I.   INTRODUCTION

Mohammed Mekuns, a former doctoral student at Capella University ("University"), sues Capella Education Company ("Capella"), alleging several breach of contract claims. Generally, Mr. Mekuns alleges Capella wrongfully dismissed him from the University without following the procedures outlined in the University's policies, thus breaching the contract between Mr. Mekuns and the University. Capella moves to dismiss Mr. Mekuns's Complaint with prejudice.

Mr. Mekuns's Complaint fails to state a plausible breach of contract claim and instead attempts to re-adjudicate the University's decision to dismiss him. As a result, the Complaint is dismissed with prejudice.

### II.   ALLEGATIONS IN THE COMPLAINT[1]

In 2006, Mr. Mekuns received a Master of Clinical Psychology degree from the University. Later that year, Mr. Mekuns returned to the University to pursue a doctorate degree in Psychology. Over the course of four years, Mr. Mekuns took classes in the program,

---

[1] When ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509 n.1 (2002).

1

progressing towards his degree. One requirement of the program was the completion of a dissertation. Throughout the process of writing his dissertation, Mr. Mekuns employed the help of three University professors, a newspaper editor to help with proofreading, four research assistants, and two hundred (200) research participants. Mr. Mekuns alleges that nearly everything he wrote was passed back and forth between and among himself and his research committee via email, with the committee suggesting changes and Mr. Mekuns adopting the changes. Mr. Mekuns completed all aspects of the Doctor of Psychology program, including "residency, practicum, internship and successfully defend[ing] his dissertation." Compl. ¶ 32.

On April 16, 2013, the University's Research Education and Compliance Specialist ("RECS") received a report accusing Mr. Mekuns of plagiarism and fabrication/falsification of data in relation to his dissertation.[2] On April 18, 2013, the RECS notified Mr. Mekuns of the accusations and allowed him to respond. Mr. Mekuns provided a written response, categorically denying the accusations and specifically claiming that any failure to cite to other authors was a mistake. A Research Misconduct Investigation Panel ("Panel") was appointed and "found significant evidence of plagiarism and falsification/fabrication of the study data." Compl. ¶ 36. The Panel submitted its report and a response from Mr. Mekuns[3] to the University's Research Compliance Committee ("Committee"). The Committee concurred with the Panel's findings and recommended Mr. Mekuns's dismissal from the University.

On March 3, 2014, the University's Chief Academic Officer wrote a letter to Mr. Mekuns dismissing him from the University. The letter also informed Mr. Mekuns of his right to appeal the decision. Mr. Mekuns, through counsel, submitted a letter requesting an appeal and asking

---

[2] The report found that twelve percent (12%) of Mr. Mekuns's dissertation matched one scholarly article while nine percent (9%) of the dissertation matched another scholarly article.

[3] In this response, Mr. Mekuns specifically stated, "[W]hile I made some careless mistakes, they were not deliberate *as the committee had suggested in their findings*." Compl. Ex. 1, 8 (emphasis added).

for reconsideration on various grounds, including the assertion that Mr. Mekuns's research committee made revisions to the dissertation, which Mr. Mekuns did not have an opportunity to review. On September 8, 2014, the President of the University wrote a letter to Mr. Mekuns denying his appeal and stating, "In accordance with Capella University's policy regarding Research Misconduct (3.03.06), this decision is final and there is no further appeal."

### A.   Text of Capella University's Research Misconduct Policy

University Policy 3.03.06 (Compl. Ex. 2) ("Policy") deals with research misconduct. According to the Policy, research misconduct is defined as follows:

> Research Misconduct includes but is not limited to falsification, fabrication, plagiarism, misappropriation, or other practices that seriously deviate from those that are commonly accepted within the academic community for proposing, conducting, or reviewing research, or in reporting research results. Research misconduct does not include honest error or honest differences in interpretations or judgments of data. A finding of research misconduct requires all of the following:
> • A significant departure from accepted practices of the research community
> • Misconduct committed intentionally, knowingly, or recklessly
> • An allegation proven by the preponderance of the evidence

Compl. Ex. 2, 3-4.

Paragraph 3.B.7 establishes the burden and standard of proof for a finding of research misconduct:

> In reaching a conclusion on whether there was research misconduct and who committed it, the burden of proof is on the university to support its conclusions and findings by a preponderance of the evidence. The committee will consider whether there is sufficient evidence of culpability and prohibited acts such that the university can meet its burden of proving misconduct by a preponderance of the evidence. The committee will also consider whether the respondent has presented substantial evidence of honest error or honest differences in interpretations or judgments of data, such that research misconduct cannot be proven by a preponderance of the evidence.

Compl. Ex. 2, 8. The Policy also states that when a final determination has been made that research misconduct has occurred, "The investigation will be closed and the discussion with the

respondent will focus on corrective/disciplinary action. The deciding official may at his or her discretion choose corrective/disciplinary action as warranted by the circumstances of each case." Compl. Ex. 2, 9 (internal numbering omitted). Finally, Paragraph 3.D.5 of the Policy states, "The decision of the university president is final." Compl. Ex. 2, 9.

### B. Breach of Contract Claims

Mr. Mekuns's Complaint alleges Capella breached the Policy, and thus its contract with him, in four ways: (1) the evidence against Mr. Mekuns does not rise to the preponderance of the evidence level, and Capella's documentation does not state that it does; (2) no proof exists that any misconduct by Mr. Mekuns was done intentionally, knowingly, or recklessly, and Capella's documentation does not state that it does; (3) Capella dismissed Mr. Mekuns without considering whether his misconduct was the result of honest error and failed to find so by a preponderance of the evidence; and (4) Capella failed to allow for any "discussion," as required by the section of the Policy which states, "The investigation will be closed and the discussion with the respondent will focus on corrective/disciplinary action."

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).  The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).  Likewise, the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**IV.   DISCUSSION**

Under Pennsylvania law,[4] the relationship between a private university and a student is contractual, the contract being "comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999).  In order to state a breach of contract claim, the plaintiff must allege the existence of a contract, a breach of the contract by the defendant, and damages resulting from the breach.  *McShea v. City of*

---

[4] As reflected by the caselaw cited by the parties in support of their respective positions, the parties appear to agree that Pennsylvania substantive law governs Mr. Mekuns's breach of contract claims.

*Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). While Pennsylvania law allows a student to sue a private university for breach of contract, "the allegations must relate to a specific and identifiable promise that the school failed to honor." *Vurimindi v. Fuqua Sch. of Bus.*, 435 Fed.Appx. 129, 133 (3d Cir. 2011).

Because the relationship between the student and private university is purely contractual, when the written guidelines and policies so specify, "[G]enerally applicable principles of contract law will suffice to insulate the institution's internal, private decisions from judicial review." *Harris v. Saint Joseph's Univ.*, Civil Action No. 13-3937, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014) (quoting *Reardon v. Allegheny Coll.*, 936 A.2d 477, 480-81 (Pa. Super. Ct. 2007)). "A distinction must be made between the allegation that [the university] breached the terms of [the policy] by failing to adhere to its provisions, which is a reviewable claim, and the allegation that the way in which these provisions were implemented, or the outcome arrived at by such implementation, was unfair—a claim which is *not* reviewable according to the provisions of [the policy]." *Reardon*, 936 A.2d at 482 n.5. In the present case, the language of the Policy stating that "[t]he decision of the university president is final" sufficiently insulates the decision from judicial review, thus the caselaw makes it clear that Mr. Mekuns may not challenge the merits of the University's decision in this Court. *See id*. at 482.

Capella does not dispute that the Policy constitutes a contract between Capella and Mr. Mekuns, nor does Capella make any arguments related to Mr. Mekuns's claims regarding damages. Thus, whether Mr. Mekuns's Complaint survives this Motion to Dismiss depends on whether the Complaint plausibly states that Capella breached the Policy.

### A. Breach of Contract Claims 1, 2, and 3

The first three of Mr. Mekuns's breach of contract claims (that the evidence against Mr. Mekuns does not amount to a preponderance of the evidence, that no proof exists that the misconduct was intentional, knowing, or reckless, and that the University failed to consider whether the misconduct was a result of honest error) all deal with the standards used in connection with the University's finding of research misconduct, and thus can be analyzed together. When looked at carefully, these claims amount to attempts to re-adjudicate the decision to dismiss Mr. Mekuns on the merits, rather than assertions that Capella failed to comply with the Policy. Thus, the claims cannot support a breach of contract cause of action.

#### i. Capella's Alleged Failure to Apply the Standards Required Under the Policy

As Capella correctly argues, any finding of research misconduct under the Policy necessarily "communicates that the University found Research Misconduct 'by a preponderance of the evidence,' and further that the misconduct exceeded the bounds of 'honest error.'" Def.'s Br. 9 (Docket No. 9). As stated in the definition in the Policy, a finding of "research misconduct" also necessarily includes a finding that the misconduct was committed intentionally, knowingly, or recklessly. As a result, Capella argues that it adhered to the Policy and that Mr. Mekuns is simply challenging the merits of the decision to dismiss him, rather than stating valid breach of contract claims. The Court agrees.

Even if these claims were not attempts to re-adjudicate the merits of the University's decision, it is evident from the Complaint and the attached documents that Mr. Mekuns's claims are not plausible. Specifically in regards to the claim that Capella breached the Policy by failing to consider whether Mr. Mekuns's conduct was mere "honest error," that claim is contradicted by Capella's documentation of its findings, which were attached to the Complaint. The

7

documentation shows that Mr. Mekuns asserted the defense of "honest error" multiple times throughout the review process and that Capella considered and incorporated Mr. Mekuns's responses in their reports.  Thus, the documents attached to the Complaint demonstrate that Capella did not breach the Policy by failing to consider whether Mr. Mekuns's conduct was attributable to "honest error."  Rather, Capella concluded that the conduct was not the result of "honest error."

The claim that no proof exists that the misconduct was committed intentionally, knowingly, or recklessly is likewise an attempt to re-adjudicate the University's decision on the merits.  Indeed, in this claim Mr. Mekuns asks the Court to examine the proof considered by the University.  To the extent that Mr. Mekuns claims that Capella failed to actually find that the misconduct was committed with the requisite intent, Mr. Mekuns own response to the Panel's findings, to wit, that the errors were "not deliberate *as the committee had suggested in their findings*," contradicts such a claim.

### ii. Capella's Alleged Failure to Recite the Standards it Applied

To the extent Mr. Mekuns alleges breaches of the Policy due to Capella failing to recite the phrase "by a preponderance of the evidence" in its findings, such claims fail.  In *Hart v. Univ. of Pittsburgh*, Civil Action No. 13-399, 2014 WL 4218616 (W.D. Pa. Aug. 25, 2014), the court ruled that certain breach of contract claims made by the plaintiff could not withstand scrutiny, including one claim that the university's "determination failed to indicate that it was based on 'clear and convincing evidence.'"  *Id*. at *21.  "The Handbook does not explicitly require that the determination use the magic phrase 'clear and convincing evidence' and Plaintiff has not explained how the determination substantively failed to comply with the requirements."  *Id*.

Similar to the handbook in *Hart*, the Policy in this case does not require Capella to use any "magic phrase" in order to make a finding of research misconduct. Under the contract with Mr. Mekuns, Capella had no obligation to recite the standard of proof in its decisions; rather its obligation was to apply the standard. While the court in *Hart* denied the claims at the summary judgment stage, it is clear that, to the extent the Mr. Mekuns alleges that Capella breached the Policy for failing to state that its findings were made by a preponderance of the evidence, those allegations fail to state a plausible breach of contract claim.

Furthermore, because the "preponderance of the evidence" standard is the "least demanding standard," *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 534-35 (3d Cir. 1996), any "finding" against Mr. Mekuns necessarily rose at least to that level.[5] Similar to the plaintiff in *Hart*, Mr. Mekuns has provided no allegations indicating that another standard was used or showing how the scales failed to tip in favor of the University findings.

Ultimately, Mr. Mekuns's breach of contract claims 1, 2, and 3 are attempts to re-adjudicate Capella's decision to dismiss him. Indeed, it is difficult to imagine how a fact-finder could possibly determine whether Capella breached the Policy in the manner asserted in these claims without skipping over the technical breach of contract analysis in favor of delving into the merits of Capella's decision. Because the Policy properly insulates that decision from judicial review, Mr. Mekuns's breach of contract claims 1, 2, and 3 fail to plausibly allege that Mr. Mekuns is entitled to relief.

---

[5] As the Third Circuit Court of Appeals has noted, the preponderance of the evidence standard "allows a fact to be considered true if the factfinder is convinced that the fact is more true than not, or to put it differently, if the fact finder decides there is a 50%–plus chance that it is true." *United States v. Mobley*, 956 F.2d 450, 467 (3d Cir. 1992).

### B. Breach of Contract Claim 4

Mr. Mekuns's claim that Capella breached the Policy by failing to provide for any "discussion" regarding disciplinary action potentially fails to identify a contractual duty which Capella breached and is also contradicted by the Complaint and its attachments. Initially, the language of the Policy cited by Mr. Mekuns, which he interprets as establishing Capella's duty to engage in a discussion focused on discipline, arguably falls short of "a specific and identifiable promise that the school failed to honor." *Vurimindi*, 435 Fed.Appx. at 133. This is especially true when the following sentence provides the University's official with discretion to "choose corrective/disciplinary action as warranted by the circumstances of each case."

Even if the Policy did create an obligation for Capella to engage in a discussion with Mr. Mekuns, the Complaint and attached documents establish that Capella did not breach the Policy. Immediately after making its finding of research misconduct, Capella wrote to Mr. Mekuns informing him of the decision, informing him that he would be dismissed from the University, and inviting him to appeal. Mr. Mekuns then submitted a written appeal, challenging his dismissal, which was considered and denied. Thus, the Complaint and its attachments contradict Mr. Mekuns's claim that Capella breached the Policy by not providing for "discussion" regarding the disciplinary action. The language of the Policy does not expressly guarantee a particular kind of discussion between the University and the subject of discipline, and even if it did, the invitation to appeal the decision, consideration of that appeal, and a letter denying the appeal (all of which are evidenced by the attachments to the Complaint) establish that Capella was not in breach of the Policy. As a result, Mr. Mekuns's fourth breach of contract claim fails to plausibly state that Capella breached the Policy.

## V. CONCLUSION

Mr. Mekuns's Complaint fails to state a claim upon which relief can be granted. Additionally, the Court finds that any amendment to the Complaint would be futile, as Mr. Mekuns's allegations and claims attack the merits of Capella's decision to dismiss him, which is insulated from judicial review, or are contradicted by the documentation attached to the Complaint. For the reasons stated above, the Court grants the Defendant's Motion to Dismiss the Complaint with prejudice.

                                            BY THE COURT:

                                            <u>S/Gene E.K. Pratter</u>
                                            GENE E.K. PRATTER
                                            UNITED STATES DISTRICT JUDGE